UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES BROWN AND
TRUDY BROWN                                                    PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:17CV551-TSL-LRA

THE UNITED STATES OF AMERICA                                    DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Charles Brown and Trudy Brown have brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, to recover damages for injuries alleged to have been suffered by Charles Brown during and as a result of a May 9, 2016 medical procedure at Keesler Medical Center in Biloxi, Mississippi. Plaintiffs allege that Mr. Brown was injured during an ultrasound and CT-guided peritoneal abscess drainage procedure when Matthew Barchie, M.D., an interventional radiologist employed by the United States, negligently inserted the trocar used in the procedure too far and pierced Mr. Brown's hepatic diaphragm and pericardium, requiring an emergency sternotomy to repair the damage. The case is currently set for a bench trial before the undersigned to commence June 10, 2019. Pending before the court at this time are the United States' Motion to Exclude the Opinions and Testimony of plaintiffs' expert, Michael Freeman, and the following motions by plaintiffs:

Motion for Partial Summary Judgment as to Defendant's Breach of the Standard of Care;

Motion in Limine and for Partial Default of Alternative Relief Due to Spoliation of Material Evidence;

Motion In Limine to Exclude Supplemental Expert Witness Opinions, or, in the Alternative, to Strike Defendant's Supplemental Designation of Expert Witnesses;

Second Motion In Limine to Exclude Supplemental Expert Witness Opinions, or, in the Alternative, to Strike Defendant's Supplemental Designation of Expert Witnesses;

Motion in Limine to Preclude Evidence of Informed Consent; and

MOTION in Limine to Preclude Evidence of Allocation of Fault to Other Healthcare Providers.

The court, having considered these various motions and related submissions, rules as follows.[1]

Partial Summary Judgment

Plaintiffs' motion for partial summary judgment as to defendant's breach of the standard of care will be granted. Under Mississippi law, "[t]o prove medical malpractice, the plaintiff must prove a duty to conform to a specific standard of conduct, a failure to conform to that standard, and an injury proximately caused by the breach of duty. Expert testimony must be used to establish that the requisite standard of care was not followed and that the failure was the proximate cause of the injury." Jackson

---

[1] The United States has also recently filed a Motion to Exclude Testimony or Argument that Tricare Payments are a Collateral Source (along with a motion to file that motion out of time). That motion will be addressed once briefing is complete.

<u>HMA, LLC v. Harris</u>, 242 So. 3d 1, 4 (Miss. 2018).[2]  Plaintiffs

have offered evidence from two retained experts, Carl Hauser,

M.D., a surgeon, and Scott Resnick, M.D., an interventional

radiologist, both of whom state that during the subject procedure,

Dr. Barchie breached the standard of care by, *inter alia*,

inserting the trocar right through the abscess, through the liver

and the diaphragm and into the thoracic cavity, where it lacerated

the lung, pericardium, and heart.  Plaintiffs have also offered

unequivocal testimony from Dr. Barchie himself that he breached

the standard of care by failing to know where the tip of the

trocar was at all times and to keep the tip of the trocar away

from Mr. Brown's heart.  For its part, the United States has

identified two medical experts, Timothy McCowan, M.D, and Shannon

Orr, M.D.  In his expert report, Dr. McCowan states:

> While certainly not expected, inadvertent puncture,
> laceration or perforation (with associated hemorrhage)
> of adjacent organs/structures is a known complication of
> any abscess procedure.  The severity of the complication
> in this case is extreme end, but still not beyond
> reported complications in the medical literature (which
> include death).  A variety of factors affect the
> frequency, nature and severity of these type
> complications, including the location and size of the
> target pathology, patient body habitus and patient
> motion, as well as radiologist training, skill and
> expertise.

---

[2]     "Liability for claims made under the FTCA is ...
determined under substantive state law."  <u>Bradfield v. U.S. ex
rel. Dep't of Veteran's Affairs</u>, 471 F. App'x 364, 365 (5th Cir.
2012).

3

Notably, Dr. McGowan does not purport to address the standard of care or opine that Dr. Barchie did not deviate from the standard of care. The United States' other medical expert, Dr. Orr, has provided an expert report in which he states the following:

> Dr. Barchie followed the standard of care while performing the interventional radiology draining procedure on Mr. Brown on May 9, 2016. Being a hepatobiliary surgeon, I'm very familiar in the anatomy of this area. The heart is a few centimeters away from the edge of the liver. While performing procedures in this area, it is not uncommon to enter the thoracic cavity. As stated in his consent to treat the patient, there is a risk of thoracic injury during this procedure. This is due to close proximity of the abscess to the heart and lungs.

Dr. Orr has provided a supplemental report in which he adds:

> Being a surgical oncologist that operates very frequently in this area, I can understand how Dr. Barchie entered the thoracic cavity. Due to the location of the abscess, the consent that was signed by Dr. Barchie states there could be thoracic injury.[3]

In the court's opinion, Dr. Orr's proposed opinion is not sufficient to create a genuine issue of material fact for trial.

An expert's testimony is admissible only if it is relevant and reliable; and an opinion is reliable only if it is adequately supported. See Seaman v. Seacor Marine L.L.C., 326 F. App'x 721, 725 (5th Cir. 2009) ("[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability

---

[3] Plaintiffs have moved to strike or exclude Dr. Orr's supplemental report/opinions. That motion is addressed *infra* at pp. 10-18.

4

analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia. Where an expert's opinion is based on insufficient information, the analysis is unreliable.") (internal quotation marks and citations omitted); Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 355 (5th Cir. 2007) (stating that if the data relied on by a party's expert "fail[s] to provide a 'relevant' link with the facts at issue, his expert opinion was not based on 'good grounds'").[4] Dr. Orr's opinion that Dr. Barchie "followed the standard of care" does not satisfy this requirement. As support for his opinion, Dr. Orr offers only that in drainage procedures such as the one performed by Dr. Barchie, entering the thoracic cavity is "not uncommon" and is a known risk of the procedure which was disclosed in the consent form executed by plaintiff. In a similar case, Mitchell v. Shikora, 2017 PA Super 134, 161 A.3d 970, *appeal granted in part*, 643 Pa. 699, 174 A.3d 573 (2017), the plaintiff alleged that the defendant physician breached the standard of care when he cut into her bowel during a laparoscopic hysterectomy. 161 A.3d at

---

[4]    Recently, in Coleman v. United States, 912 F.3d 824, 832 (5th Cir. 2019), the Fifth Circuit held that state law governed the admissibility of expert testimony in a medical malpractice case brought under the FTCA. Mississippi also applies the Daubert standards of relevance and reliability. See Kronfol v. Johnson, No. 2017-CA-00542-COA, 2019 WL 1915564, at *5 (Miss. Ct. App. Apr. 30, 2019)).

971.  On appeal of a defense verdict, the court reversed, finding

that the trial court had erred in admitting testimony from the

defendant's expert that a bowel injury was a known risk of

complication of the surgery.  In so concluding, the court

explained:

> [W]hile evidence of risks and complications of a
> surgical procedure may be admissible to establish the
> relevant standard of care, ... in this case, such
> evidence was irrelevant in determining whether
> Defendants, specifically Dr. Shikora, acted within the
> applicable standard of care.  Acknowledging a liberal
> threshold to determine the relevancy of such evidence,
> we nevertheless emphasize that the evidence must be
> probative of whether Defendants' treatment of Mitchell
> fell below the standard of care.  The fact that one of
> the risks and complications of the laparoscopic
> hysterectomy, i.e., the perforation of the bowel, was
> the injury suffered by Mitchell does not make it more or
> less probable that Dr. Shikora conformed to the proper
> standard of care for a laparoscopic hysterectomy and was
> negligent.  Indeed, in deciding to undergo this surgery,
> Mitchell expects that the treatment will be rendered in
> accordance with the applicable standard of care,
> regardless of the risks.

Id. at 975 (citations omitted)[5]  As the court recognized in

Mitchell, the fact that the injury which occurred is a known

complication or risk of a given procedure may be relevant to

establishing the standard of care, but that fact alone does not

establish compliance with the standard of care.  Indeed, in

Mitchell, the defendant's expert acknowledged that while bowel

injuries can happen in surgery with the best of care because of

the proximity of other organs, i.e., it is a known risk, such

injuries can also occur as a result of the surgeon's negligence so

that the mere fact that an injury occurs which is a known risk

tells one nothing about whether the doctor breached the standard

of care.  Id. at 974.  The same is true here.  As in Mitchell, the

fact that the injury suffered by Mr. Brown was one of the risks

and complications of the drainage procedure performed by Dr.

Barchie "does not make it more or less probable that Dr. [Barchie]

---

[5]     The court in Mitchell continued, stating:
Moreover, the evidence would tend to mislead and/or
confuse the jury by leading it to believe that
Mitchell's injuries were simply the result of the risks
and complications of the surgery.  See [Brady v. Urbas,
631 Pa. 329, 111 A.3d 1155, 1161 (2015)] (noting that
evidence of risks and complications could confuse the
jury and cause it to "lose sight of the central question
pertaining to whether defendant's actions conformed to
the governing standard of care.").

Mitchell v. Shikora, 2017 PA Super 134, 161 A.3d 970, 975, appeal
granted in part, 643 Pa. 699, 174 A.3d 573 (2017).  There is no
risk of jury confusion in this case, since the case is to be tried
to the court and not a jury.  However, the court's piont – that
the proper focus is not on whether a particular event is a risk of
the procedure but rather whether or not Dr. Barchie deviated from
the standard of care – is nevertheless valid.

conformed to the proper standard of care for [an abscess drainage procedure] and was negligent." Id. at 975. Dr. Orr's proffered opinion, therefore, which he bases on the fact that the injury suffered was a risk of the procedure, is not sufficient to create a genuine issue of material fact as to whether Dr. Barchie breached the standard of care.[6] Accordingly, plaintiffs' motion for partial summary judgment on this issue will be granted.[7]

Plaintiffs' Spoliation Motion

During Mr. Brown's May 9, 2016 abscess drainage procedure, a Clinical Sedation Record (CSR) was generated on which Mr. Brown's heart rate, blood pressure, oxygen saturation level and other vital signs were recorded. That record was originally prepared in paper form and was subsequently scanned or otherwise reproduced and entered in the hospital's electronic records. However, in response to plaintiffs' request for production, the United States has advised that the form cannot be located in either its paper or electronic form. Plaintiffs assert that this form contained

---

[6]      Dr. Orr's report cites no other basis or explanation for his opinion regarding Dr. Barchie's alleged compliance with the standard of care. See Bates & Co., Inc. v. Hosokawa Micron Intern., Inc., No. 1:04-CV-475, 2005 WL 6227845, *1 (E.D. Tex. April 4, 2005) ("An expert's testimony is generally limited to his report produced in accordance with [Rule 26(a)(20(B)], and to explanations he provides which are a 'reasonable extension of his report.'").

[7]      The court's conclusion that plaintiffs are entitled to partial summary judgment on Dr. Barchie's breach of the standard of care renders moot plaintiffs' motion in limine to preclude evidence of informed consent.

"important medical facts which are material to the severity of the acute injury suffered" by Mr. Brown during the subject procedure in May, 2016; and they argue that due to what they contend is the United States' spoliation of material evidence, they have been "deprived of valuable impeachment evidence relative to Dr. Orr's opinions." They thus have moved the court for various and alternative forms of sanctions for the United States' alleged spoliation, ranging from an adverse inference, to limiting Dr. Orr's testimony as to the existence and/or cause of Mr. Brown's post-procedure medical decline to entering a default judgment in their favor. The court concludes that plaintiffs' motion should be denied.

The parties agree that federal evidentiary rules govern the spoliation analysis. See <u>King v. Ill. Cent. R.R.</u>, 337 F.3d 550, 556 (5th Cir. 2003) (applying federal law in determining whether the district court abused its discretion in rejecting spoliation arguments); <u>Settles v. United States</u>, No. SA-17-CV-01272-DAE, 2018 WL 5733167, at *2 (W.D. Tex. Aug. 29, 2018) (holding that spoliation issue in FTCA case is procedural issue governed by federal law). Under federal law, spoliation of evidence "is the destruction or the significant and meaningful alteration of evidence." <u>Guzman v. Jones</u>, 804 F.3d 707, 713 (5th Cir. 2015) (quoting <u>Rimkus Consulting Grp., Inc. v. Cammarata</u>, 688 F. Supp.

2d 598, 612 (S.D. Tex. 2010)).  A party seeking sanctions based on spoliation of evidence must establish each of the following: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Rimkus Consulting Group, 688 F. Supp. 2d at 615-16.

     As to the requirement of a culpable state of mind, the Fifth Circuit has held that sanctions against a spoliator are permissible "only upon a showing of bad faith or bad conduct."  Guzman, 804 F.3d at 713.  In this context, bad faith "generally means destruction for the purpose of hiding adverse evidence."  Id.  "Mere negligence is not enough to sustain a finding of spoliation, and if one may just as reasonably infer from the facts that the alleged spoliator was negligent, a finding of bad faith is inappropriate."  Barnett v. Deere & Co., No. 2:15-CV-2-KS-MTP, 2016 WL 4544052, at *1 (S.D. Miss. Aug. 31, 2016) (internal quotation marks and citations omitted).  Plaintiffs herein have shown only that the CSR form is missing; they have not

demonstrated that it was destroyed for the purpose of hiding adverse evidence.  Accordingly, the motion will be denied.[8]

### Plaintiffs' Motion in Limine re: Allocation of Fault

Two of plaintiffs' motions in limine pertain to the reports/opinions of Dr. Shannon Orr, one of the government's medical experts.  In one of those motions, plaintiffs seek to preclude the United States from presenting evidence or argument at trial regarding fault or negligent acts of other healthcare providers.  Specifically, they seek an order prohibiting the United States from offering evidence of breaches of the standard of care by other healthcare providers who provided care and/or treatment to Mr. Brown.

In his original report, Dr. Orr opined that Mr. Brown's decline in health following the drainage procedure at issue in this case "is a result of his significant co-morbidities and chronic intra-abdominal infection/sepsis by retained gallstones and not the result of his procedure on May 9, 2016."  He concluded that "[w]hile it is unfortunate that Mr. Brown underwent a sternotomy that was related to his IR procedure on May 9, 2016, his medical decline was a result of retained gallstones and chronic infection and not the sternotomy.  He sustained no long-

---

[8]     The court does not hold that plaintiffs are not precluded from attempting at trial to demonstrate spoliation.  The court holds only that they have failed in their motion to establish each of the elements that could support a sanction for spoliation.

term sequelae from the puncture of his heart and/or the
sternotomy."

In his original report, Dr. Orr relates that for nearly a
year following Mr. Brown's release from Keesler Medical Center in
May 2019, Mr. Brown "continued to suffer from acute on [sic]
chronic abdominal infections that failed systemic antibiotic
therapy and repeated IR drainage."  Regarding this condition, his
report states:

> Despite failing multiple rounds of antibiotics and IR
> procedures, a surgery consult was never done.  During
> this time, Mr. Brown never had a CT scan which showed
> complete resolution of the abscess.  Retained gallstones
> are a known cause of recurrent abscesses, especially in
> a patient who had a gangrenous gallbladder and when the
> abscess occurs perihepatic.  When Mr. Brown sees Dr.
> Slakey at Tulane Medical Center, Dr. Slakey immediately
> thinks he is likely to have retained gallstones.  On
> 4/25/2017, Dr. Slakely operates on Mr. Brown and finds
> ... gallstones. ...  On a followup CT scan, the abscess
> is almost completely resolved.  Since his surgery, Mr.
> Brown has not required any further intervention for
> infection from his abdomen.  Mr. Brown continues to
> improve physically now his infection has resolved.

In his supplemental report produced by the United States on
November 21, 2018, Dr. Orr, addressing the cause of Mr. Brown's
decline in health, states:

> The reason for his decline in is (sic) health is chronic
> intraabdominal sepsis and infection that was not
> appropriately managed until Dr. Douglas Slakey operated
> on him need (sic) on 4/25/2017 . . . it was his chronic
> infection in his abdomen that missed managed (sic) that
> lead to multiple hospital admissions, prolonged
> hospitalizations, further IR procedures, and multiple
> rounds of antibiotics.

Plaintiffs object that Dr. Orr's supplemental report presents for the first time "a brand new alternative causation theory", namely, that "Mr. Brown's illness was caused by 'mismanaged' medical care", and further argue that "the only possible relevance of [Dr. Orr's] opinion, is to attempt to reduce [the United States'] responsibility for Mr. Brown's damages flowing as a consequence of the initial injury by apportioning fault to someone else."  They thus submit that as the United States has not pled or offered evidentiary support for this new apportionment of fault defense, then any evidence of negligent acts or omissions, wrongful conduct, fault, or mismanagement attributable to any healthcare provider (other than those employed by the United States) should be excluded as irrelevant.

Mississippi Code Annotated § 85-5-7, which governs allocation of fault, provides that "in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tortfeasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault."  The United States did not plead an affirmative defense of allocation of fault.  <u>See</u> <u>Pearl Public School Dist. v. Groner</u>, 784 So. 2d 911 (Miss. 2001) (allocation of fault under § 85-5-7 is affirmative defense that must be pled).  However, the United States has not asserted (through Dr. Orr or otherwise) that the negligence of someone

13

other than Dr. Barchie caused or contributed to any injury suffered by Mr. Brown as a result of Dr. Barchie's negligence in performing the drainage procedure on May 9, 2016. Dr. Orr's opinion, as clearly expressed in his original report and his supplemental report, is that the puncture of Mr. Brown's heart during that drainage procedure and the resulting emergency sternotomy *did not cause or contribute* to the subsequent decline in Mr. Brown's medical condition, and that his decline was instead caused by the chronic infections which were in turn caused by the retained gallstones. Hence, Dr. Orr's proposed testimony that Mr. Brown's medical care from and after June 30, 2016 for abdominal infections was "not appropriately managed" or was "mismanaged" is not due to be stricken on the basis that it is in the nature of an impermissible allocation of fault defense. It is, however, due to be stricken on the basis that it is neither reliable nor relevant.

In his supplemental opinion, Dr. Orr, while opining that Mr. Brown's medical care for his chronic infections from and after June 30, 2016 was "mismanaged", does not state in what manner his care was mismanaged. He says only that "there were multiple times when a surgeon could have intervened but there was never a surgery consult." Similarly, in his original report, Dr. Orr implied that a surgery consult should have been requested sooner. Thus, the failure of Mr. Brown's medical providers to request a surgery consult is the only arguable "mismanagement" of Mr. Brown's care

Dr. Orr has identified. Yet in neither his original nor his supplemental report does Dr. Orr state what a more timely surgery consult would have accomplished. On that issue, plaintiffs' expert, Dr. Carl Hauser, stated in a supplemental report produced on October 24, 2018, that Mr. Brown did require surgical intervention for his chronic infections and that he did improve after surgery by Dr. Slakey, but Dr. Hauser maintained that "Mr. Brown was unable to undergo that operation until April 25, 2017 due to his general debility." According to Dr. Hauser,

> Had it been possible to intervene surgically and treat this chronic infection prior to April 25, 2017, it is probable that Mr. Brown's chronic abdominal infection would have been treated sooner, with earlier improvement. But the medical records and the Brown's deposition testimony reflect that Mr. Brown's weakened condition and debilitation caused directly by the injuries received during the May 9, 2016 procedure discouraged earlier surgical intervention and treatment of the chronic epi-phrenic collection. Whether and to what extent the mild chronic abdominal irritation caused by retained gallstones is therefore unrelated to the injury and damages experienced by Mr. Brown as a result of the May 9, 2016 procedure. The chronic abdominal collection required surgical intervention as evidenced by Mr. Brown's improvement after Dr. Slakey's procedure. But the chronic critical illness experienced as a result of the May 9, 2016 procedure prevented earlier surgical intervention. Inability to treat any infectious sources because of Mr. Brown's unfitness for operation therefore prevented treatment of chronic retained stones allowing further deterioration and decline, and the associated medical care, treatment, and expenses. The chronic abdominal collection required surgical intervention as evidenced by Mr. Brown's improvement after Dr. Slakey's procedure. But the chronic critical illness experienced as a result of the May 9, 2016 procedure prevented earlier surgical intervention. Inability to treat any infectious sources because of Mr. Brown's unfitness for operation therefore prevented treatment of chronic

> retained stones allowing further deterioration and
> decline, and the associated medical care, treatment, and
> expenses.

In his supplemental report, Dr. Orr expresses his agreement with Dr. Hauser that Mr. Brown's condition would have improved sooner with earlier surgical intervention. However, nowhere in either his original nor his supplemental report does Dr. Orr assert that the surgery reasonably could have been performed on Mr. Brown prior to April, 2017. Indeed, even though the United States has argued that Dr. Orr's supplemental report was intended for the specific purpose of rebutting the supplemental opinions expressed by plaintiffs' experts, including Dr. Hauser, Dr. Orr does not address Dr. Hauser's opinion on this issue.

Moreover, given Dr. Orr's opinion that Mr. Brown's medical decline was due to his chronic infections resulting from retained gallstones and not due to any injury he may have suffered as a result of the May 6, 2016 drainage procedure and emergency sternotomy, then testimony by Dr. Orr relating to the appropriateness of the medical care Mr. Brown received for the chronic infections would not be relevant. That is, such testimony would not make it more or less likely that the infections were caused by retained gallstones or that the infections were the cause of his alleged debility. For these reasons, Dr. Orr will be precluded from offering testimony relating to his opinions as to

the appropriateness of the medical care Mr. Brown received for his
chronic abdominal infections.

### Plaintiffs' Motions to Strike Supplemental Expert Opinions

On April 1, 2019, plaintiffs moved pursuant to Federal Rules
of Civil Procedure 26(a)(2)(D) and 37 and Local Rule 26(a)(5) to
exclude as untimely the supplemental designation/expert opinions
of Dr. Orr and Dr. Robert Shavelle, which the United States served
on November 21, 2018, eight days after the close of discovery.
See Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these (expert)
disclosures at the times and in the sequence that the court
orders."); Unif. Loc. R. 26(a)(5) ("A party is under a duty to
supplement disclosures at appropriate intervals under FED. R. CIV.
P. 26(e) and in no event later than the discovery deadline
established by the case management order."); Fed. R. Civ. P.
37(c)(1) ("If a party fails to provide information or identify a
witness as required by Rule 26(a) or (e), the party is not allowed
to use that information or witness to supply evidence on a motion,
at a hearing, or at a trial, unless the failure was substantially
justified or is harmless.").  Thereafter, on April 4, 2019, some
five months after the close of discovery, the United States served
on plaintiffs supplemental designation/expert reports of Bruce
Brawner (life care planner) and James A. Koerber (economist).
Plaintiffs promptly moved to strike those supplemental opinions as
well, on the basis that they were untimely.

The United States asserts in response to plaintiffs' motions to strike that it could not have submitted these witnesses' supplemental reports on or before the discovery deadline since the reports were intended to rebut opinions expressed in plaintiffs' own experts' supplemental reports, which plaintiffs did not produce until the day discovery ended. It submits that the supplemental reports of Dr. Orr and Dr. Shavelle were timely under Federal Rule of Civil Procedure 26(a)(2)(D), which requires that expert disclosures that are "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C) [must be made] within 30 days after the other party's disclosure." The United States acknowledges that the supplemental reports of Brawner and Koerber were not timely under this rule but argues that since none of its experts' supplemental reports raises any new issue or theory and all are truly supplemental in nature, then under the circumstances of this case, fairness dictates that the supplemental reports be allowed and the experts permitted to testify on the matters contained therein.

Irrespective of whether the subject supplemental expert reports were timely produced, plaintiffs will not be prejudiced if their motions to strike are denied. Plaintiffs requested that in the event the court were to deny their motion to strike Dr. Orr's supplemental report, they be given an opportunity to supplement

Dr. Hauser's report and to designate an additional expert to address Dr. Orr's opinion that Mr. Brown's medical care was mismanaged. However, as the court has concluded that such testimony by Dr. Orr will not be permitted in any event, no such supplementation/designation would be required. They further advise that if the court were to deny their motion to strike Dr. Shavelle's testimony, they would request to have their life expectancy expert, Freeman, address the assertions in Dr. Shavelle's supplemental report, with particular reference to Mr. Brown's ability to walk. To the extent that Freeman is otherwise qualified to provide opinion life expectancy testimony and can demonstrate a reliable basis for his opinions, he will be permitted to testify on the matters contained in Dr. Shavelle's supplemental report without the necessity of further supplementing his own report. Beyond these limited matters, plaintiffs do not contend and have not attempted to demonstrate that they require additional discovery or a continuance of the trial if their motions to strike are denied. Accordingly, the court, in its discretion, will deny their motions to strike.

### United States' Motion to Exclude Opinions and Testimony of Michael Freeman

The United States has moved to exclude the opinions and testimony of plaintiffs' expert, Michael Freeman, contending his opinions do not satisfy the admissibility criteria of Federal Rule of Evidence 702, as interpreted by <u>Daubert v. Merrell Dow</u>

<u>Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), as he lacks such relevant education, training or experience as would enable him to render opinions on life expectancy or on any medical issue relevant to this case and as he has not employed or applied a reliable methodology to reach his proffered opinions.  Typically, in a case such as this, where the court is unable to fully evaluate the relevance and reliability of a witness's proposed testimony on the basis of the parties' written submissions, the court would conduct a <u>Daubert</u> hearing in advance of trial.  In this case, however, as the case is to be tried to the court and not a jury, the court will instead permit Freeman to testify and determine what weight, if any, to give his testimony.  <u>See</u> <u>Gibbs v. Gibbs</u>, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in <u>Daubert</u> are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury"); <u>Whitehouse Hotel L.P. v. IRS Commissioner</u>, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]here being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.").  Accordingly, the court will reserve ruling on the United States' motion to strike.

    <u>Conclusion</u>

    Based on all of the foregoing, it is ordered that Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Breach of the Standard of Care [Dkt. 56] is granted; Plaintiffs' Motion in

Limine and for Partial Default of Alternative Relief Due to Spoliation of Material Evidence [Dkt. 59] is denied; Plaintiffs' Motion In Limine to Exclude Supplemental Expert Witness Opinions, or, in the Alternative, to Strike Defendant's Supplemental Designation of Expert Witnesses [Dkt. 67] is denied, with the understanding that Dr. Orr is precluded from testifying as to alleged mismanagement of Mr. Brown's medical care and Mr. Freeman will be permitted to address matters contained in Dr. Shavelle's supplemental report; Plaintiffs' Second Motion In Limine to Exclude Supplemental Expert Witness Opinions, or, in the Alternative, to Strike Defendant's Supplemental Designation of Expert Witnesses [Dkt. 74] is denied; Plaintiffs' Motion in Limine to Preclude Evidence of Informed Consent [Dkt. 86] is denied as moot; and Plaintiffs' Motion in Limine to Preclude Evidence of Allocation of Fault to Other Healthcare Providers [Dkt. 88] is granted on other grounds. The court will reserve ruling on the United States' Motion to Exclude the Opinions and Testimony of Michael Freeman.

SO ORDERED this 16th day of May, 2019.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE